**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDERSON WESLEY TECU ALVAREZ,<br>Petitioner,<br>v.<br>FERETI SEMAIA, ET AL.,<br>Respondents. | Case No. 5:26-cv-04570-MAR<br>**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE** |

## I.

## INTRODUCTION

On August 12, 2026, Petitioner Anderson Wesley Tecu Alvarez (A# 249-178-946) ("Petitioner"), an immigration detainee represented by counsel, filed a Verified Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Petition"), challenging his detention in immigration custody. Dkt. 1, ("Pet."). On August 20, 2026, Respondents Markwayne Mullin, Secretary of the Department of Homeland Security ("DHS"), Jaime Rios, Acting Field Office Director for Los Angeles, Immigration and Customs Enforcement ("ICE"), Todd Lyons, Acting Director of ICE, Todd Blanche, Acting Attorney General of the United States, and Fereti Semaia,

the Warden of the Adelanto ICE Processing Center (collectively, "Respondents") filed an Answer to the Petition (the "Answer") in which they indicate they are not presenting an opposition to the Petition. Dkt. 8. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody.**

## II.

## FACTUAL BACKGROUND

The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition, which is verified by counsel. Pet. at 32. Respondents had the opportunity to dispute these facts or provide additional facts, but declined to do so. Dkt. 8. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true).

Petitioner is a native and citizen of Guatemala who entered the United States as an unaccompanied minor in December 2023 and has resided continuously in the United States since that time. Pet. at 6. On July 30, 2024, Petitioner filed asylum with the United States Citizenship and Immigration Services. Id. On July 12, 2024, Petitioner's removal proceedings were dismissed. Id. Petitioner has not been charged with, or convicted of, any crime in the United States. Id. at 7.

On or about August 19, 2025, Petitioner was detained during an ICE raid on a car wash at which Petitioner was present to wash his car. Id. at 7. During that enforcement operation, ICE officers arrested numerous individuals at or near the car wash, including Petitioner. Id. At the time of his arrest, Petitioner was not subject to a final order of removal. Id. Petitioner was not committing any crime or doing an unlawful action. Id. Petitioner was arrested by ICE officers without a warrant. Id. The Form I-213 identifies no facts establishing an exception to the warrant

requirement. Id. In particular, the Form I-213 does not state that ICE officers had reason to believe Petitioner was likely to escape before a warrant could be obtained, nor does it identify any exigent circumstance requiring his immediate warrantless arrest. Id.

Despite his prior removal proceedings having been terminated, he was placed in removal proceedings. Id. at 6. While detained at Adelanto, Petitioner's case proceeded on an expedited timetable associated with the detained docket. Id. On June 1, 2026, an immigration judge ordered removal. Id. Petitioner timely appeal such decision on July 2, 2026. Id. Petitioner's removal order remains pending before the Board of Immigration Appeals. Id.

On September 16, 2025, an Immigration Judge ("IJ") denied Petitioner's Motion for Custody Determination finding insufficient evidence that Petitioner would not pose a flight risk. Id. at 7. The order indicated the decision was based on lack of a sponsor, lack of strong ties to the United States, and speculative immigration relief. Dkt. 1-5 at 11–12. Petitioner filed a second motion for custody redetermination. Pet. at 8. Petitioner presented evidence of a sponsor and a fixed address. Id. at 20. The IJ denied the motion and held that the court did not have jurisdiction because Petitioner had not presented changed circumstances. Dkt. 1-6 at 6. The IJ also held that the sponsor and fixed address did not alleviate the IJ's previously stated flight concerns. Id.; Pet at 20.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that his arrest and detention violate 8 U.S.C. §§ 1226(a) and 1357(a)(2) because he was arrested without a warrant and without any evidence of exigent circumstances justifying a warrantless arrest. He argues that his arrest therefore exceeded the authority conferred by the Immigration and Nationality Act ("INA"). Pet. at 17. Petitioner's second claim for relief is that the IJ abused their

discretion in failing to apply the appropriate legal standard under Matter of Guerra and Matter of Patel. Id. at 18–22. Petitioner's third claim for relief is that the IJ's failure to properly apply the governing legal standard violated Petitioner's Fifth Amendment right to due process. Id. at 22–25. Petitioner's fourth claim for relief is that his prolonged detention of over a year, based on a warrantless arrest and two bond determinations that resulted in conclusory findings, violates his Fifth Amendment right to due process. Id. at 25–27. Petitioner's fifth claim for relief is that the bond determination violated the Administrative Procedure Act ("APA") because it was arbitrary, capricious, and an abuse of discretion. Id. at 27–30.

Petitioner seeks immediate release from custody, reasonable attorney's fees, and other relief the Court deems just and appropriate. Id. at 31.

Respondents declined to present an opposition argument. Dkt. 8.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation."

Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the

asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind, courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

As an initial matter, it is undisputed that Petitioner has resided in the United States since 2023 after entering the United States as an unaccompanied minor. Pet. at 6. It is further undisputed that Petitioner was previously released from immigration custody. See Dkt. 1-7 at 44; Cornejo v. Andrews, 823 F. Supp. 3d 1085, 1097 (E.D. Cal. 2026) ("In releasing Petitioner …HHS must have determined that he was neither a flight risk nor a danger to the community") (citing Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("[Immigration officials] may release the minor to a 'sponsor' ... so long as the minor is not dangerous ... Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd 905 F.3d 1137 (9th Cir. 2018)). Petitioner has no criminal history. Pet. at 7. Based on these undisputed facts, the Court concludes that Petitioner developed a substantial liberty interest in remaining out of custody based on his previous release from custody, the length of time he lived in the United States, and the ties he built to the community over the past three years. Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."); see also Tinoco v. Noem, 2025 WL 3567862, at *6 (E.D. Cal. Dec. 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for

Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972). In contrast, the government's interest in detaining Petitioner without a pre-deprivation hearing is low. Martinez Cruz v. Lyons, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases); Pinchi, 792 F. Supp. 3d at 1063.

Furthermore, "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." Cruz v. Lyons, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129 (C.D. Cal. Nov. 6, 2025). The fact that Petitioner received a post-deprivation bond hearing, after his re-detention by immigration authorities, does not remedy the violation of Petitioner's procedural due process rights. Kumar v. Rios, No. 5:26-CV-01988-MAR, 2026 WL 1764923 (C.D. Cal. June 12, 2026). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson, 2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales v. U.S. Immigr. and Customs Enf't, 2026 WL 1026234 (C.D. Cal. Apr. 15, 2026); Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). This is

especially so where a post-deprivation bond hearing is itself constitutionally deficient. Kumar, 2026 WL 1764923, at *5. Here, Petitioner argues, and Respondents do not contest, that the IJ abused his discretion in denying bond, rendering Petitioner's bond hearing constitutionally deficient. Pet. at 18–25; Answer at 2; see, e.g., Yan Lu v. Los Angeles Field Dir., et al, No. 5:26-CV-00575-JAK (SPX), 2026 WL 1455320, at *12 (C.D. Cal. Apr. 15, 2026) (citing Soriano v. Hernandez, 830 F. Supp. 3d 1071 (W.D. Wash. 2026) (finding an abuse of discretion where the IJ "provided no rationale why it should be concluded that under these circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak")).

Therefore, the Court concludes that Petitioner's arrest on August 19, 2025 without a pre-deprivation hearing violated Petitioner's procedural due process rights. See, e.g., J.A.E.M. v. Wofford, 812 F. Supp. 3d 1058, 1071 (E.D. Cal. 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained. The root requirement of the Due Process Clause is that an individual be given an opportunity for a hearing before he is deprived of any significant protected interest." (internal quotation marks and brackets omitted)); Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026).

Given these violations of Petitioner's due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release

on his second OSUP before his current re-detention.”). “Accordingly, Petitioner’s release from custody is the appropriate remedy.” Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) (“Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE’s custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.”). Thus, the Court concludes that only return to the status quo can remedy the violation of Petitioner’s due process rights in this case.

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.[1] See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) (“Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified.” (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner’s future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 (“If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by

---

1 As set forth above, Petitioner has a substantial liberty interest in remaining free from detention which must be considered under the first Matthews factor. Under the second Matthews factor, the risk of erroneous deprivation is very high because an Immigration Judge has already abused his discretion in denying Petitioner bond twice. Finally, under the third Matthews factor, the Government’s interest in detaining Petitioner without a pre-deprivation hearing is very low because a bond hearing is routine and can be easily provided. See Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025).

clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo, 2025 WL 2381464, at *8 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community.").

A permanent injunction may be entered, at the discretion of the Court, where the movant shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006). The Court finds that Petitioner has made such a showing here. Petitioner has suffered an irreparable injury by being detained in violation of the INA and his due process rights, and would again if Respondents repeat such conduct. Legal remedies such as damages would be inadequate to cure the unconstitutional deprivation of liberty. And the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and file a habeas petition to secure his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.[2]

Thus, the Court concludes that Petitioner has made a sufficient showing under the eBay Inc. factors to justify a limited permanent injunction targeted at the specific harms presented in this case. See, e.g., Huy Cu v. Marin, 2026 WL 1427009, at *1-3 (C.D. Cal. May 21, 2026) (rejecting objections that prospective injunctive relief is inappropriate in the context of an immigration habeas petition); Araujo-Contreras v.

2 Where the party opposing injunctive relief is the government, "the third and fourth factors—the balance of equities and the public interest—merge." Garcia v. County of Alameda, 150 F.4th 1224, 1234 (9th Cir. 2025) (internal quotations omitted).

Janecka, 2026 WL 1625368, at *1-4 (C.D. Cal. June 3, 2026) (rejecting objections to permanent injunctive relief requiring a pre-deprivation hearing before re-detention in the context of an immigration habeas petition finding a violation of the petitioner's procedural due process rights).

## VI.

## ORDER

Based on the foregoing, the Court GRANTS the Petition as follows. Respondents shall immediately release Petitioner **Anderson Wesley Tecu Alvarez (A# 249-178-946)** ("Petitioner") from custody (subject only to conditions that were in place prior to his August 2025 detention, if any) and return any confiscated property and documents to Petitioner upon release. Respondents shall not re-detain Petitioner pursuant to 8 U.S.C. § 1226 without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before a neutral arbiter at which the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. **Respondents shall file a notice of compliance within forty-eight hours.**

IT IS SO ORDERED.

DATED: August 24, 2026

HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE